Dargan, Ck.
delivered the opinion of the Court.
By a decree of the Court of Equity, the real estate of the late William Holmes was sold at Edgefield Court House, on the first Monday in December, 1849, by the Commissioner in Equity. At this sale, one Tandy Burkhalter became the purchaser of said real estate, at the price of $5 50 per acre, he being, at that price, the highest and last bidder. Burkhalter having complied with the terms of the sale, the Commissioner executed to him a conveyance for the land.
This was a rule against the purchaser, to shew cause why the sale should not be vacated, and the deed of the Commissioner in Equity to him set aside, “ on the ground of an unlawful agreement, between the said Burkhalter and A. B. Kilcrease, not to bid against each other for said land at said sale ; which agreement was carried out, and whereby the said sale of said land was greatly affected, to the serious injury of the estate of the said William Holmes, deceased.”
The rule was supported by the affidavit of Kilcrease, who *62 stated that the lands of the estate of William Holmes adjoined the lands of both himself and Tandy Burkhalter; that they each desired a portion of the lands about to be sold; that they had a conference upon the subject; and the result was, an agreement not to bid against each other at the sale; and that they further agreed on the manner in which the said real estate should be divided between them, if bought. The deponent further stated, that he attended the sale but made no bid, and that, if he had been the bidder, he would have given seven dollars per acre, rather than the land should have been bought by any other person. He further stated, that both he and Burkhalter were able to have bought and paid for the whole of the land.
From the affidavit of J. B. Talburt, it appears that Burk-halter, after the sale, refused to let Kilcrease have the part of the land he wanted, except at the price of $12 per acre. Burk-halter slated to the deponent, that he had acted wrong in not telling Kilcrease on the day of sale, that if he, Kilcrease, wanted any part of the land he must be the highest bidder.
The answer of Burkhalter to the rule denies all the material allegations set forth in the affidavit of Kilcrease, and especially denies all partnership, or combination, with Kilcrease in the purchase. He admits they had a conversation about the land before the sale; that Kilcrease asked him if he intended to bid for the land, and that, on being answered affirmatively, Kil-crease said he wanted a portion, which he pointed out, and spoke of his wish to have a road through it to his plantation. To this Burkhalter replied, “ if I buy the land, I will not hinder you from a road, and I will cut you off a piece.” This, he says, was the whole substance of the conversation, and he denies having agreed to sell Kilcrease any particular quantity of the land in the event of his buying it, or at any stipulated price.
Upon this state of facts, the rule came on for trial. The Chancellor who heard the cause ordered the rule to be discharged, and confirmed the sale ; the discharge of the rule to operate no prejudice to the parties in filing a bill.'
From this order, an appeal has been taken, and notice given *63 of a motion to be made before this Court, to reverse the said order, and to set aside the sale, on the grounds,
“ 1st. That there was an unlawful agreement between the said Tandy Burkhalter and A. B. Kilcrease, entered into before the sale, not to bid against each other at said sale, which agreement was carried out, whereby the parties in interest were greatly injured.”
“ 2d. Because, upon the affidavits submitted, and upon the law, and from considerations of public policy, the sale of the land should have been set aside.”
I will not undertake to say, that a question of this kind may not be raised on a rule to shew cause. In Hamilton vs. Hamilton, (2 Rich Eq. 355) the question as to the validity of the sale was made in this way. There, titles for the property sold had not been executed by the Master. Chancellor Haepee, who tried that cause, seems to have considered the case of an execu-tory contract, in reference to this point, as not different from one in which titles have been executed and delivered. He says “ the principle upon which the cases go is this ; that by the falling of the auctioneer’s hammer, and the entry of the sale by the Master in his book, the contract is complete; different from the English practice, according to which there is no contract till the biddings are reported, and the sale confirmed. "With us, upon the falling of the hammer, and the entry of the sale, the purchaser has a right to demand a title as a matter of course.” The Chancellor appears to have doubted his authority to take cognizance of the cause in this form of proceeding. For he says, “ it being a complete executory contract, I must seek for something, which will authorize me to set it aside; and it seemed to be agreed, that the motion was to be decided on the evidence before me, as if a bill had been filed for that purpose.”
Upon this question, (as to the proper mode of proceeding) the . Court means to conclude nothing at the present time. My individual opinion is, that a -proceeding by bill is the most proper mode to bring such question, as is here raised, to a hearing. Certainly, if the question, as to the fairness of the sale, is to be *64 tried upon a rule, against the purchaser, (unless the facts can be agreed on, as in the case of Hamilton vs. Hamilton,) the case must be tried and adjudged upon the facts admitted in the answer to the rule. The purchaser, whether he claims under a deed executed, or an executory contract that is complete, has rights, which, in a disputed state of facts, are not to. be concluded by the affidavits of witnesses, who have not been subjected to the ordeal of a cross-examination.
If this case is to be adjudged by the answer of Buckhalter, (the purchaser) to the rule which has been served upon him, there is not the slightest ground for the interference of this Court in setting aside the sale. According to his statement, the transaction wears the most innocent aspect, imaginable. But this Court is of opinion that, upon the shewing made in the affidavit of Kilcrease, the principal witness for the party moving in this proceeding, there are no such facts presented which, if they were uncontested, would authorize the Court to vacate the sale. This proceeding seems to have been instituted under a misapprehension of the cases upon this subject. It is not every joint bidding, or partnership among bidders, at a sale under a decree in Chancery, that is corrupt and fraudulent. Such joint or partnership bid-dings may be perfectly legitimate. To render them unlawful and void, there must be a fraudulent intent to depress and chill the sale, to obtain the property at an under value, or to obtain other undue and unconscientious advantages. An estate might be offered for sale, which neither of two joint bidders would be able, separately, to purchase. Or, it might be, that neither of two joint bidders, though able as to pecuniary means, would desire to purchase the whole of the estate offered for sale; though each would be desirous to become the owner of a part. Such persons, if not permitted to unite in their biddings, would not enter into the competition at all. To adopt so stringent a rule as that contended for, in reference to sales in Chancery, would, in many instances, have the effect of diminishing, instead of enhancing the prices. In the very case relied on in support *65 of this motion, (Hamilton vs. Hamilton,) it is said by the.Chancellor who delivered the opinion of the Court, citing with approbation the case of Smith vs. Greenlee, (2 Dev. 128,) “it is shewn, however, in that, as in other cases, that persons may properly unite for the purpose of making a bid among themselves, where no one of the associates was able to purchase, or desired to own, the entire property exposed to sale.” A fraud in a case like this, as in every other case, must be judged of by all the attendant circumstances. If the copartnership in bidding appears, from the attendant circumstances, to have been entered into with a.fraudulent intent to depress and chill the sales, and to obtain undue advantages in the purchase of property, the sale will be vacated. If such joint bidding has no such fraudulent intent, and is bona fide, it will not have.the effect of vitiating the sale. . . .
The Court is satisfied with the Circuit decree. It is ordered and decreed that the Circuit decree be affirmed and the appeal be dismissed.
JohNston and Dunicin, CC. coucurred.

Appeal dismissed.