HEARD NOVEMBER TERM, 1877.

CASE No. 674.

JOHN R. RENWICK AND JAMES E. RENWICK v. G. D. SMITH,. ADMINISTRATOR OF W. W. RENWICK, J. W. N. BEARD, ADMINISTRATOR OF C. S. BEARD, AND R. B. LYONS, ADMINISTRATOR OF JAMES ROGERS.

1. An administrator filed a sworn return, intended to be a full and final account, but produced no vouchers, and no decree was passed by the Ordinary, and no notice of such filing was had by the distributees; *held,* that there was not such an abandonment of his trust, as would give currency to the statute of limitations. *Cases reviewed.*

2. A bequest to "my daughter R. and her children" of certain negroes, "lately appraised at three thousand dollars, she accounting for interest from January 1st, 1842, till my death, and at that time she is to receive an equal part, with her other sisters of" certain other personalty; R.,.

having no children at death of testator, *held*, that she took an absolute estate in all the property given to her by this clause of the will.

3. Where a testator in the last clause of his will, (not having previously disposed of his entire estate,) bequeathed all the "rest and residue" of his "other property," to his four children, and directed that if any of his daughters should die without leaving children, "their property hereby given" was to go over—the word *hereby* referred to the "other property" mentioned in this clause, and not to the dispositions of the entire will.

4. Where a husband administered on an estate, in which his wife had an interest, and wasted the assets before her death in 1850, his marital rights attached upon his wife's share of the assets so wasted.

Before NORTHROP, J., at Union, June Term, 1876.

The plaintiffs are the only children of Rosannah P. Renwick, who was the wife of W. W. Renwick, and daughter of John Rogers—all of Union county. John Rogers died January 27th, 1847, leaving of force a last will and testament, bearing date March, 1842; and he left surviving him one son and three daughters. The son, James Rogers, was nominated executor, but he renounced the executorship, and also released all of his interest in the estate in favor of his sisters. Letters of administration *cum testamento annexo*, were granted March 20th, 1847, to W. W. Renwick and Clough S. Beard, jointly, both of whom had married daughters of testator, and James Rogers signed their administration bond as a surety. W. W. Renwick attended to almost all of the duties of the office.

Mrs. Renwick had no children at the date of her father's will and none at his death. Her first child was still-born between those dates. Her second was the plaintiff, John R., born November 2d, 1847, and her third and last, James E., was born December, 1849. She was married in 1841, and died January, 1850.

In August, 1851, W. W. Renwick, as administrator, filed his return in the Court of Ordinary, sworn to as stated in the opinion of the court, wherein he charged himself with all of his receipts on account of the estate, and credited himself with all of his payments, and with "net balance for distribution, $10,574.-88;" next follows an account, wherein he credits himself with "distribution of above net balance, as per will," that is—

To Jane E. Beard and R. P. Renwick, to make their
    advancements equal to S. M. Lyons'.................. .........$1504 50
To Jane E. Beard and husband.......... .......... ......... 3023 46
To R. P. Renwick and husband.......... .......... ......... 3023 46

Then follows credit of $431.92 to each of four children of Mrs. Lyons (a daughter of testator, then deceased,) with no total added up. Next follows under head of "Dr." the very same items, together with $431.92 to each of the remaining three of Mrs. Lyons' children, and a total of $10,574.88. The return has no dates whatever to the items.

The personal property was sold March, 1847, on a credit of one year; the land was sold (under a power given in the will) in November, 1847, for $3700, on a credit of one and two years, and was purchased by W. W. Renwick. These two sale bills, together with cash on hand at testator's death, made up the entire estate, with the addition of only $96.37, collected by W. W. R. before 1850. The personal estate sold for $5966.72, of which Renwick purchased $2570.37, Beard $829.35, other parties $2567.

C. S. Beard died in 1871, W. W. Renwick in 1872, and James Rogers in 1873; and the defendants, J. W. N. Beard, G. D. Smith and R. B. Lyons, respectively, administered on their estates.

The action was commenced January 27th, 1875.

The complaint claimed that Rosannah P. Renwick was entitled only to a life estate in the property willed to her; that the plaintiffs, her sons and only children, were entitled to an absolute estate in remainder therein; that no part of the share of the said Rosannah P. had ever been delivered to her in her lifetime, or to the plaintiffs since her death; that there was due the plaintiffs the sum of $4527.96, with interest from January 31st, 1850, as appeared from returns of the said administrators of John Rogers, and that the administrators had wasted the assets of the estate.

And the complaint prayed judgment for the sum of $4527.96, with interest from January 31st, 1850, for an account for costs and for general relief.

The defendants answered, denied that the plaintiffs had such an estate as they claimed, and insisted that the said Rosannah

took an estate in fee simple absolute under the will. They also insisted that the estate of Rosannah went into the possession of her husband, and that his marital rights attached thereto. And they further claimed the protection of the statute of limitations, because the cause of action did not accrue to either of the plaintiffs within four years before the commencement of their action.

The clauses of the will construed by the court are as follows:

3. I give, devise and bequeath to my daughter, Rosannah P. Renwick, and her children, the following negroes: Rosy, Lucy, Jim, Elijah and Rosetta, her children, and Jesse and Ned, lately appraised, as aforesaid, at three thousand dollars, she accounting for interest from the first day of January, eighteen hundred and forty-two, till my death, and at that time she is to receive an equal part, with her other sisters, of my land and negroes above stated, including the Hagar family of negroes.

5. I reserve a life estate in all my other property, and at my death I wish my other negroes fairly appraised and given off to my children in families, as they can best agree among themselves; if not, sold and divided as above stated; the rest and residue of my other property to be sold and divided in four equal parts among my aforesaid children, and if any of my daughters should die without leaving children, their property hereby given to be divided in four equal parts, one part to be retained by their husbands, and the other three parts to come back to my other children.

\*  \*  \*  \*  \*  \*  \*

By the fourth clause of the will, the only land of which testator died seized was directed to be sold; and counsel agreed that it was thereby converted into personalty.

The Circuit judge decided that John R. Renwick was barred by the statute of limitations; that James E. Renwick was not so barred; that, under the will, Rosannah P. Renwick took a life estate, with remainder in fee to her sons, the plaintiffs; that the marital rights of W. W. Renwick did not attach to her share. And the decree referred it to the clerk to take an account in conformity with such rulings.

From this decree John R. Renwick appealed, upon the ground that he is not barred by the statute. And all the defendants ap-

pealed, upon the grounds that the statute of limitations barred James E. Renwick; that the said Rosannah P. took an absolute, indefeasible estate under the will; and that the marital rights of her husband, the said W. W. Renwick, attached to her share.

*Mr. J. F. J. Caldwell,* for plaintiffs.

An administrator or other fiduciary, and the sureties on his bond, cannot claim the benefit of the statute of limitations against the *cestuis que trust. Ang. on Lim.,* § 166, *et seq.;* 2 *De-saus.* 54; 4 *Strob. Eq.* 207. The only qualification allowed of this rule is where some act is done by the fiduciary purporting to be a termination or disavowal of the trust. 4 *Rich. Eq.* 60; 4 *Strob. Eq.* 189; *Bail. Eq.* 195; 1 *Strob. Eq.* 79; 2 *Strob. Eq.* 334; 3 *Strob. Eq.* 39; 3 *Rich. L.* 438; 14 *Rich. Eq.* 176. But this case is like none of these. He states the balance due, but does not profess to have paid them. If the statute did bar, it would only bar an accounting, not a demand of balance admitted to be on hand.

II. The second question is whether Rosannah P. Renwick took a life estate under John Rogers' will, the remainder being in his sons, the plaintiffs, or whether she took an absolute estate.

It is indisputable — since *Lampley* v. *Blower,* 3 *Atk.* 396; *Henry* v. *Archer, Bail. Eq.* 535; *Nix* v. *Ray,* 5 *Rich. L.* 423— that a devise or bequest to one and his or her children or issue, with a limitation over, in case of the death of the first taker without having issue, operates to create a purchase, and not an inheritance, on the part of such children or issue, and thereby creates a life estate in the first taker and an estate in remainder in the children, after the death of the first taker. On the other hand, it is conceded that a bare bequest or devise to one, with a limitation over in case of that one dying without issue, will create a fee simple in the first taker, subject only to the condition of children being born to him or her, and that upon the happening of that event, the estate of the first taker becomes absolute.

The question here is, which of such two provisions did John Rogers really make? If the fifth clause of the will is taken by itself, it is not unreasonable to say that the later provision is intended. If the will is taken as a whole, it is submitted that the

former case is provided; for, by combining the third and the fifth clauses, we make devises and bequests to Rosannah Renwick and her children, and if she should die without leaving children, then over to her husband and her brothers and sisters, in equal shares. It is conceded that a simple conveyance or devise, without further description, confers an estate in fee simple absolute; that dubious provisions of a will shall be construed in favor of the heir-at-law; and that an absolute and certain gift of property shall not be thwarted by mere conjecture as to the grantor's intention. But the paramount rules in the construction of wills are, that the intention of the testator, unless in direct contravention of the established principles, shall be consulted and carried out; and that the whole will shall be construed together.

The following authorities declare the necessity of reading the whole will together, in order to arrive at the intention of the testator, and also to show that it is the intention of the testator that is to govern the case. 2 *Ves., Jr.,* 329; 10 *Bac. Ab.* 533; 2 *Paige* 122; *Bail. Eq.* 517; 10 *Bac. Ab.* 534; 6 *Ves., Jr.,* 129; 7 *Ves.* 403; 10 *Ves.* 595.

Words may be supplied in a will to render a sentence complete and intelligible, in aid of the apparent intent to be collected from the whole context. 10 *Bac. Abr.* 534; 6 *East* 486. As to supplying words in a will, see 1 *Jarman on Wills* 428, *et seq.;* *Amb.* 122; 13 *Ves.* 476; 1 *Kee.* 486; 2 *Dowl. & R.* 398; 2 2 *Moo. & R.* 490. And where words of description of an estate devised are postponed to the end of a clause, it has been held that they might apply to a devise in an earlier portion of it, although gifts are separately made to the devisee. 5 *East* 87; 10 *Rich. Eq.* 341; 1 *Desaus.* 354; 3 *Barb. Ch.* 488; 6 *Gratt.* 456; 4 *McC.* 418; 1 *Jarman on Wills* 500.

III. If her estate had been absolute, plaintiffs would still be entitled to two-thirds of it, for W. W. Renwick never reduced his wife's share into possession. The facts show that he did not. *Spann* v. *Stewart,* 1 *Hill Ch.* 326, does not apply, for in that case both husband and wife administered. Nor does *Wallace* v. *Boozer,* 1 *Hill Ch.* 393. See 2 *Kent* 138; *Ex parte Elms,* 3 *Desaus.* 155; *Id.* 135; *note,* 2 *Hill Ch.* 644; 1 *Spears Eq.* 142; *Dud. Ch.* 238; 4 *Strob. L.* 463; 2 *N. & McC.* 147; 12 *Ves.* 497; 2 *Hill* 644.

*Mr. R. W. Shand,* for defendant, Lyons.

I. J. R. Renwick's claim is barred by statute of limitations.

The rule is to be found in *Ang. on Lim.,* § 174, in *Colburn* v. *Holland,* 14 *Rich. Eq.* 234, and cases cited. A case like this may be found in 4 *Rich. Eq.* 92. Here the administrator stated his indebtedness and immediately below credited himself with the payment of it all, except to three persons, probably minors.

II. James E. Renwick is likewise barred.

He is not entitled to nine months on account of the administrator's death. See argument of Chancellor Wardlaw in 7 *Rich. Eq.* 40. The limitations prescribed in the Code of Procedure do not apply, (*Code,* § 96,) because his right of action accrued before the code was passed; when he was still a baby. 3 *Rich.* 438.

III. Under the will of John Rogers, Mrs. Renwick took an absolute, indefeasible interest in all of the property thereby bequeathed to her.

(1.) It is admitted that this whole estate is personalty. *Ad. Eq.* *135 *and notes; Fletcher* v. *Ashburton,* 1 *Lead. Cas. in Eq.* 563; 8 *Rich. Eq.* 291.

(2.) Under the first sentence of Section 3 of this will, the property given to Mrs. R. and her children, she having no children at the time, became an estate tail. *Wild's case,* 6 *Co.* 17; 6 *Rich. Eq.* 91. The property bequeathed in the fifth section became a fee conditional. 1 *McC. Ch.* *60; 9 *Rich. Eq.* 58. But words which, as to lands, would create a fee conditional, as to personalty give an absolute estate. 6 *Term R.* 307; 4 *Rich. Eq.* 378. And fees tail in South Carolina are construed to be fees conditional, and, therefore, as to personalty, fees tail and fees conditional are regarded as absolute estates. *Bail. Eq.* *351.

(3.) These positions are conceded, but it is contended in reply that *she,* where it last occurs in Section 3, means *she and her children;* and that the third and fifth clauses must be construed together, and then governed by principle of *Read* v. *Snell* and *Henry* v. *Archer.*

*a.* The case in first *Desaus.* 355, relied on, is a good illustration of true rule as to first point: it must be a "palpable mistake." But see 4 *McC.* 418; 6 *Munf.* 114; 1 *Brev.* 414; 1 *Jarman on Wills* 432; *Id.* 745, *Rule* 19.

*b.* The mistake on the second point arises from looking for his actual intent, whereas we can only ascertain his legal intent. *O'Hara on Wills, ch. II.,* § 5.

(4.) All property is acquired by descent (which is by operation of law) or by purchase (which is by act of the parties.) Where they coincide, descent prevails. Where property is taken by descent, the heir takes only that which is left by the first taker.

A devisee takes by direct devise, or by implication, (and implications are necessary or not,) and in the construction of a will the *legal intent* must govern. *Bail. Eq.* 517.

(5.) But intention is ascertained by certain fixed rules. 2 *Jarman on Wills* 739; 2 *McC. Ch.* 70, *et seq.;* *Doug.* 78; 3 *T. R.* 85; 5 *Id.* 323; 2 *M. & S.* 455; 5 *B. & Ad.* 129; *O'Hara on Wills* 29, *ch. II., p.* 29; 1 *Brev.* 414.

(6.) What are these certain rules?

Rule 3, in *Sm. on R. & P. Prop.* 776, reads: "An express disposition, though probably involving an oversight or mistake by the testator, cannot be controlled by inference which is not necessary or indubitable." In 2 *Jarman on Wills* 740 are twenty-four rules of construction, of which—

"XI. That, in general, implication is admissible only in the absence of, and not to control an express disposition."

"V. That the heir is not to be disinherited without an express devise or necessary implication: such implication importing not natural necessity, but so strong a probability that an intention to the contrary cannot be supposed." 5 *Pick.* 536; 18 *How.* 385.

See, to same effect, 11 *Rich. Eq.* 198. The following authorities fully sustain and explain these rules: *Right* v. *Sidebotham,* *Doug.* 730; 8 *T. R.* 64; 14 *Ves.* 364; 1 *Jarman on Wills* 465, 477. These principles have been repeatedly recognized in the courts of South Carolina. 4 *McC.* 60; *Bail. Eq.* 298; 3 *Rich. Eq.* 559; 9 *Rich. Eq.* 58; *Bail. Eq.* 351; 2 *McM.* 472; 9 *East* 267. For definition of necessary implication, see 4 *Bro. C. C.* 534; *Mer.* 219.

(7.) Another rule of construction is, that every part of the will must stand by itself, if possible. Rule 15, in *Sm. on R. & P. Prop.* 776. Rule 22, 2 *Jarman on Wills* 745, and 2 *Williams on Ex'rs* 929. For authorities, see 4 *B. & C.* 667; 1 *Salk.* 239;

9 *East.* 272; 2 *Ves., Sr.,* 216; 8 *Rich. Eq.* 259. The cases cited on the other side (5 *East* 87; 4 *McC.* 418; 10 *Rich. Eq.* 341; *Bail. Eq.* 40; 5 *Rich.* 423; 2 *B. & C.* 680,) do not militate against these positions.

(8.) Other rules may be referred to, particularly those in 2 *Jarman on Wills* 740, which are numbered 12 (sustained by 4 *B. & C.* 667, and 9 *East* 272), 16 (sustained by 3 *Pick.* 363), and 18 (sustained by 3 *Myl. & Cr.* 584.) A will almost exactly like John Rogers' will has been lately construed by the Supreme Court of Virginia, and our construction sustained. See *Barks-dale* v. *White,* 3 *L. & E. Rep.* 444, No. 14, April 4th, 1877; and see *Id.* 190.

(9.) Apply these rules to the construction of John Rogers' will, and we will find a fee tail and an absolute estate in Section 3, and a fee conditional in Section 5; all of which, the property being personal, the law regards as absolute and indefeasible.

IV. W. W. Renwick's marital rights attached to his wife's share in her father's estate before her death in January, 1850.

In all of the cases relied upon to sustain the contrary, (16 *Ves.* 416; 3 *Desaus.* *155; *Bail. Eq.* 204; 2 *Hill Ch.* *644; *Dud. Eq.* 238; 1 *N. & McC.* *147; *Spears Eq.* *143; 4 *Strob. L.* 463;) the property was unreduced *choses in action,* unpartitioned chattels, or the husband had no right to receive the money, as in 2 *Hill Ch.* *644.

The decision in *Baker* v. *Hall,* 12 *Ves.* 497, evidently referred to that which remained after the part had been disposed of, and did not include the money realized from the sale of that part. This is the conclusion of Judge O'Neall. 1 *Hill Ch.* *333; and see 1 *Williams on Ex'rs* *734.

Chancellor Kent, in the sentence cited, (2 *Kent.* *138,) is speaking of "her property in action," as the context shows. But as to money received, the marital rights do attach to the extent of the wife's share. 1 *Hill Ch.* *333. In *Wardlaw* v. *Gray,* 2 *Hill Ch.* *653, the case of *Spann* v. *Stewart,* is approved, when the assets are wasted. What is wasting the assets? 2 *Williams on Ex'rs* *1765, and *Ram on Assets* *495.

The complaint charges a wasting of assets. The purchases by Renwick were paid at maturity. 6 *S. C.* 490; *Dud. Eq.* 30;

17 *E. C. L. R.* 343 ; 2 *Williams on Ex'rs* \*1124, \*1128.  The presumption is that all the notes were paid at maturity, (2 *Hill Ch.* \*146,) and paid to W. W. Renwick.  3 *Rich. Eq.* 341.  The purchases by Renwick exceeded his wife's share.

January 27th, 1879.  The opinion of the court was delivered by

WILLARD, C. J.  This action is by the personal representatives of a devisee under the will of John Rogers, for an account against the administrators of W. W. Renwick and C. S. Beard, who took out letters of administration *cum testamento annexo* on the estate of the testator, John Rogers, the executor named in his will having renounced the executorship, and against the administrator of James Rogers.

The first question to be considered is whether the demand is barred by the statute of limitations.  The Circuit decree holds that the plaintiff, James E. Renwick, is not barred, but that the plaintiff, J. R. Renwick, was so barred.  The plaintiff, J. R., excepts to this decision, and the defendants to that holding that J. E. is not barred.  The question is whether there was such a termination of the office and duty of the administrators that the plaintiffs were bound to bring action within the time limited by the statute after such termination.  The only evidence of such a fact is the circumstance that an account was presented to the Ordinary, intended, no doubt, as a full and final account, to which is appended the following note:

"COURT OF ORDINARY, 18th August, 1851.

"Personally appeared before me W. W. Renwick, administrator of John Renwick, with the will annexed, who proves their return by his own oath, but produces no vouchers.

"B. JOHNSTON, O. U. D."

It does not appear that the plaintiffs were cited to an accounting, or that they had notice of the filing of the account, nor that the administrators *cum testamento annexo* ever filed their vouchers, or that the Ordinary passed upon the accounts or made any decree in the matter.  It is clear that this was not a final discharge of the duties incident to administration.  It was part of the duty

of the administrators to account for the estate of their testator that came to their hands.

Filing an account is not in itself a compliance with the whole of this duty. It is at most furnishing the basis of the accounting, the object of the accounting being to verify or falsify its statements. To make that accounting final, it was necessary that the parties entitled to question the account filed should have an opportunity afforded them, by proper notice, to exercise that right, and that final action should be taken on the account by the Ordinary. This was not done; and the administrators *cum testamento annexo*, as represented by their administrators, must be considered as not having discharged themselves of the duty of accounting. Under this view, the statute of limitations cannot be regarded as having barred either of the plaintiffs, and the decree is, in that respect, erroneous.

The authorities bearing on the conclusions just presented will now be considered. *Riddle* v. *Riddle*, 5 *Rich. Eq.* 32. In this case, one of the questions was as to the commencement of the statute to run upon an administrator's accounting. Chancellor Dunkin says : " If an *ex parte* return to the Ordinary, in which an executor or administrator strikes a balance against the estate, should be regarded as a discharge of his trust, from which the statute would run, as against a bill to account, it would be an alarming disclosure, as well to creditors as to legatees and distributees of the deceased." It was held that the trust continuing, the statute was not a bar. *Miller* v. *Alexander*, 1 *Hill Ch.* 25. In this case it was held that even a decree of the Ordinary, taken *ex parte*, was not binding on the parties as an estoppel; that, to make it binding as an estoppel, it should appear that there was a proceeding either upon citation or the voluntary submission of the parties sought to be bound thereby. The result of this decision is to hold that the duty of accounting was not fully performed, even where there had been an actual accounting, and a decree based upon it, as affecting parties entitled to notice of such accounting, and who had not received such notice, or expressly waived their rights. That duty being still obligatory, administration was still existing, and the statute did not run. *Long* v. *Cason*, 4 *Rich. Eq.* 60. In this case the authority of *Miller* v. *Alexander* was recognized, but the question of the

statute of limitations then raised depended on the fact that the guardian had been removed and a new guardian appointed, so that the statute commenced to run in favor of the guardian removed, and against the new guardian at the time of removal. It was held that this was such a termination of the trust that the statute had then commenced to run. *Crosby* v. *Crosby*, 1 *S. C.* 337. The decision in this case is entirely consistent with the foregoing, although the question of the statute of limitations went off on the ground that the administrator, being also guardian of the infant plaintiff, he could not take advantage of the statute, when, in his character of guardian, he was chargeable with whatever delay had occurred.

The currency of the statute does not necessarily depend upon the fact of a full and final discharge of the duty of the administration. It commences to run when it appears that the administration has done some act, brought to the notice of the parties affected by it, equivalent to an abandonment of such office, although such act may be in itself wrongful. But the case before us presents no such state of things. The only question raised is whether the office and duty of the administrator ceased by a full discharge of all its duties at a certain time, and that question has already been disposed of.

The next question is, what estate did Rosannah P. Renwick take under the will of John Rogers? The question, as presented to us, assumes that the entire distributable estate is to be regarded as personalty, and the will will be considered in its bearing on personal property alone. The third paragraph of the will is a gift of personalty and realty to Rosannah P. Renwick "and her children." She had no child born alive prior to the death of the testator. The bequest imports an immediate gift to children, and as there was no child to take as purchaser at the death of the testator, children born after that event could only take by descent, as issue. Hence, as it regards realty, the devise imported a fee conditional. As it regards personalty, the condition attached to the fee, viz., that the estate should descend to the issue of the first taker, *per formam doni*, was impossible, as the law did not permit such a descent in the case of personalty, and as the condition was a condition subsequent, following the ordinary rule

U

as to conditions subsequent, the fee, unburdened of the condition, remained absolute. This would give Rosannah P. an absolute estate in the personalty. The foundation of the conclusion just stated is in the first resolution in Wild's case.    6 *Coke's R.* 17. The doctrine has been uniformly applied in this state.    It will only be necessary to cite *Shearman* v. *Angel, Bail. Eq.* 351, and *Henry* v. *Archer, Id.* 535, with the observation that the exposition of the doctrine of the last-named case that appears in *Hay* v. *Hay,* 4 *Rich. Eq.* 384, is essential to a correct understanding of the true result of that case.    Under the third paragraph standing alone there is no limitation over on the failure of issue, and therefore no mode of referring to the intricacies that are found in the cases growing out of the different views that have been taken of the effect of a limitation over both, upon the character of the first estate and the sense of the terms by which it is created.    But it is contended that the last portion of the third paragraph be read as follows : " And at that time," meaning the death of the testator, " she and her children are to receive an equal part," &c.    The proposition is that the words " and her children " should be interpolated after the word " she " as the words stand in the will, so as to read in the manner just recited. It is obvious that such an interpolation would not help the sense of that paragraph.    The testator must be regarded as using these words immediately prior to his death, and as at that time there was no child of Rosannah *in esse,* and as he must be regarded as intending an immediate devise at his death to children, such disposition could not take effect except by taking children to mean issue, who could take by descent.    It will not be necessary to follow the elaborate argument of counsel upon the grounds for correcting the expressions of a will by the underlying intent gathered from other parts of the will.    But it will not be amiss to remark that much of the uncertainty that exists as to the application of the various authorities on the subject arises from overlooking the fact that the rules of interpreting technical words, used in a will, have been applied to phrases and connected expressions as importing some known mode of disposition. Technical words, even when employed in a will, are to be taken in the technical sense as their primary sense, and such sense must

be corrected, if at all, by finding the testator's glossary or controlling intention in the context. Certain forms of expression employed by testators have been placed upon the same ground as technical words in this respect, and in their primary sense, considered as formula, must be taken to have the meaning imputed to them by the adjudicated cases, and the correction of the apparent sense must be reached under the rules applicable to technical words already referred to.

It is also contended that certain words employed in the fifth paragraph of the will are to be read as qualifying the gift in the third paragraph, by limiting over the estate there given upon the condition of Rosannah dying without leaving children. The portion of the fifth paragraph in question reads as follows : "The rest and residue of my other property to be sold and divided in four equal parts among my aforesaid children ; and if any of my daughters should die without leaving children, their property hereby given to be divided into four equal parts," etc. The will thus disposes of these parts. In the first place this purports to be a residuary clause, and the words "hereby given" must be regarded, in the first instance, as referring to that property which is directly disposed of under the residuary clause. That property is characterized by the word "other," which, when used in a residuary clause, naturally excludes all property the subject of prior express devises in the preceding parts of the will. Grammatical considerations must be of undoubted actual force to undo this sense ; if at best they are conjectural, the primary sense of the terms remains. It will not be necessary to consider how the clause may be affected by its grammatical relation to its immediate antecedent as a conclusive argument, for allowing "other" to have its ordinary force is found in the character of the express dispositions. If the devises that precede the residuary clause are carefully examined, it will be found that they leave undisposed of an undivided one-fourth part of the entire estate, real and personal, after deducting specific devises and bequests, and to this undisposed-of interest the residuary clause must be regarded as intended to be applied. This construction finds a necessary office for such a residuary clause as this purports on its face to be, and thus affords the highest ground for the construction

already represented. It must be concluded that the limitation over contained in the fifth paragraph is inapplicable to the bequest contained in the third paragraph.

The remaining question arises upon the facts that the husband of Rosannah P. administered with the will annexed on the estate of the testator and converted the estate into cash, and that during his administration and during the life of his wife, he wasted the assets of the estate, and finally that he survived his wife. This fact of wasting the assets is set up in the seventh cause of the complaint, and its force is not destroyed by anything that is presented in the case. The plaintiffs can only claim as the distributees of their mother, as it regards the property of which she took an absolute estate, as already determined. Claiming through their mother, they can only claim what she could have claimed had she survived her husband. She could not have claimed compensation out of her husband's estate at large on the ground that he had wasted assets appertaining to her personal estate, which he had the right to reduce to possession. *Spann* v. *Stewart*, 1 *Hill Ch.* 326; *Wardlaw* v. *Gray*, 2 *Hill Ch.* 644. The cases in this state all hold that the right of a distributee, as against the administrator upon whom the title to the personalty devolves by law, is a mere chose in action, until perfected through the act of the administrator. *Spann* v. *Stewart, supra; Sturgineger* v. *Hannah*, 2 *N. & McC.* 147. The same rule is applied to a legatee and the executor, the legatee having a mere chose in action until assent to the legacy by the executor. *Cannon* v. *Ulmer, Bail. Eq.* 204. As such, there must be a reduction to possession under the marital rights before such chose passes out of the estate of the wife. Where the husband, as administrator or executor, gets possession of the estate out of which his wife is entitled, as distributee or legatee, there is no reduction to possession as long as that estate remains specifically in the hands of such executor or administrator, or in some form in which it can be identified as appertaining to the decedent's estate, and neither the payment of debts, nor assent, distribution or partition has been made. But no case holds that after the decedent's estate has gone out of the possession of the executor, either the wife or her representatives can hold the estate of her deceased husband

amenable to make good her interest in assets wasted, while the authority of the cases already cited for the purpose is directly to the contrary. It would be manifestly inconsistent to allege at the same time that the husband had not reduced her choses to possession, and that he had appropriated and wasted them.

It is clear that the plaintiffs are not entitled to an account for any portion of the estate derived from their mother, through the third paragraph of the will.

The decree must be reversed and the cause remanded to the Circuit Court for proceedings conformable herewith.

Decree reversed.

McIVER and HASKELL, A. J.'s, concurred.