1593

William M. GROOMS, as Executor of the Estate of H. Ray Berry, Deceased, Respondent v. Dantzler A. KENNERLY, Jr., Richard Roe and Jane Doe, representing as a class all other persons, natural or legal, adults or minors suffering under any disability and also all other persons unknown, natural or legal, claiming any right, title estate, interest and/or lien upon the real estate and/or stock described in the Complaint, Of whom Dantzler A. Kennerly, Jr. is Appellant.

(401 S.E. (2d) 190)

Court of Appeals

*Thomas B. Bryant, III*, Orangeburg, *for appellant.*

*Russell H. Putnam, Jr.* of *Austin Law Firm*, and *Curtis W. Dowling* of *Barnes, Alford, Stork & Johnson*, Columbia, *for respondent.*

Heard Nov. 14, 1990.

Decided Jan. 7, 1991.

*Per Curiam:*

This is an action to quiet title. William M. Grooms, as executor of the estate of H. Ray Berry, filed this action claiming ownership of the former home of Dantzler A. Kennerly, Sr. and Christine S. Kennerly, and a lot adjacent to that home. Grooms asserts that the record owner of the Kennerly home is Orangeburg Holding Corporation and that Berry was the sole shareholder in that company. Dantzler A. Kennerly, Jr. argues that he, not Berry, owns the home since Berry held title to the property solely in his fiduciary capacity as attorney for Kennerly, Jr.'s parents. The master in equity issued a decree quieting title in Grooms. We affirm in part, reverse in part and vacate in part.

This case stems from the complex financial and legal affairs of Mr. Kennerly, Jr.'s parents, both of whom died before this case was begun. Mr. Kennerly, Sr. and Mrs. Kennerly filed for bankruptcy in 1979. Prior to filing, they transferred the Kennerly home and other personal assets to Iranian Overseas Investment Co., Inc. The trustee in bankruptcy, Robert F. Anderson, challenged the transfer, seeking to bring the assets conveyed to Iranian back into the bankruptcy estates. Ultimately, a settlement was reached between the trustee and Iranian. The trustee determined that the Kennerly home was

transferred as security for a genuine indebtedness and, therefore, conveyed title to the property to Iranian and paid it a sum of money. In exchange, Iranian waived its rights to all other transferred assets and agreed to assert no future claims against the bankruptcy estates.

If there had been no subsequent developments with respect to the Kennerly home, neither of the parties before this Court would have a claim of ownership. Title to the Kennerly home and the adjacent lot indisputably would be in Iranian. But there were subsequent developments affecting ownership, and it is these developments that are critical to the claims of both Grooms and Kennerly, Jr.

After the bankruptcy court issued its order directing and approving settlement, Iranian deeded the Kennerly home to Orangeburg Holding, a then newly formed corporation in which Ray Berry was the sole shareholder. Grooms argues that since Berry owned all of the stock in Orangeburg Holding, Berry's estate owns the Kennerly home.

Kennerly, Jr. argues that Berry held title to Orangeburg Holding's stock solely in his capacity as a fiduciary to Mr. and Mrs. Kennerly. He contends that Berry was their attorney acting on their behalf and at their direction when he incorporated Orangeburg Holding and named himself the sole shareholder. This, Kennerly, Jr. contends, was done so that his parents could keep their home despite having filed for bankruptcy. Therefore, Kennerly, Jr. claims, Berry's ownership was under a trust in his favor as the sole beneficiary under both of his parents' wills.

Neither Grooms nor Kennerly, Jr. produced direct evidence to establish at whose direction and for whose benefit Orangeburg Holding was created. Consequently, we must rely on circumstantial evidence. Since this is an equity action, we may weigh the evidence ourselves. *McCutcheon v. Charleston County Department of Social Services*, ___S.C. ___, ___, 396 S.E. (2d) 115, 120 (Ct. App. 1990). In doing so, we find substantial evidence in the record that Berry held legal title in Orangeburg Holding for the benefit of Mr. and Mrs. Kennerly, Sr.

Because the question before us is whether Berry held this property as a fiduciary for the Kennerlys, it is important to determine whether, as Kennerly, Jr. contends, Berry was the

Kennerlys' lawyer.[1] Undisputed evidence in the record reveals that he was their lawyer. This evidence consists of, among other things, a 1981 handwritten receipt from Berry to Kennerly, Sr. in the amount of $1250.00; a letter from Berry acknowledging that he prepared a will for Mrs. Kennerly in 1982; and a letter from Berry written in April of 1983 to a credit recovery service directing them to send all future correspondence to him.

Having determined that Berry represented the Kennerlys, at least in some matters, at the time in which Orangeburg Holding was created and the Kennerlys' bankruptcy was pending, we turn to the question of whether he was acting at the Kennerlys' direction and on their behalf when he incorporated Orangeburg Holding and named himself sole shareholder. In addressing this question we look to the substance of the arrangement and the intent of the parties, rather than the form of the transaction. *Taff v. Smith*, 11 S.C. 306, 103 S.E. 551 (1920). As a result, we conclude Berry was acting for the Kennerlys when he created Orangeburg Holding.

Berry's own letters reveal he sent the original articles of incorporation, corporate minutes, bylaws, stock certificate stubs, tax reports, tax returns and a bill for incorporating Orangeburg Holding to Mr. Kennerly, Sr. Although Grooms discusses these letters in some detail in his brief, he offers no suggestion why Berry would send the stated documents to a party who allegedly had absolutely no interest in Orangeburg Holding. Grooms also offers no reason why the Kennerlys would be allowed to stay in possession (which, through Kennerly, Jr., continues today) of the property. We are persuaded Berry sent these documents to Kennerly, Sr. and allowed the Kennerlys to retain possession of the property because he was acting on Kennerly, Sr.'s behalf.

By his own admission in a letter to another attorney, Berry also paid out of the bankruptcy settlement $20,000 to Kennerly, Sr. Berry asserted that he was acting at the behest of

---

[1] Although none of Berry's records indicate that he was representing the Kennerlys when he created Orangeburg Holding, this is far from conclusive for two reasons: (1) Berry apparently kept poor records and many of his files are missing or incomplete; and (2) the alleged agreement between him and the Kennerlys would have amounted to fraud on the bankruptcy court. It would have been risky to maintain a file on such an agreement.

"the gentleman from Connecticut who represented the interests of Iranian Overseas Investments," but nothing in the record states who this gentleman was. In other words, the identity of the person at whose direction Berry was acting remained hidden, but the obvious beneficiary was Kennerly, Sr.[2]

Finally, evidence in the record reveals that Kennerly, Sr. regarded and asserted himself as the controlling person in Orangeburg Holding. Apparently a dispute developed between Kennerly, Sr. and Berry concerning a debt Kennerly, Sr. asserted Berry owed. Kennerly, Sr. hired another attorney to contact Berry about resolving the matter. Significantly, the letter from Kennerly, Sr.'s attorney stated that Mr. Kennerly, Sr. sought his services "on behalf of himself *and the Orangeburg Holding Company*." (Emphasis added.) Nothing in the record indicates Berry challenged Kennerly, Sr.'s authority to act on behalf of Orangeburg Holding. Furthermore, no reasonable person would have attempted to assert a claim on behalf of a corporation in which he had no interest—and certainly not against the corporation's owner.

We therefore conclude that Berry was not the true owner of Orangeburg Holding or the Kennerly home. Even if we assume that Grooms has shown that Berry was the legal title holder of Orangeburg Holding,[3] under the facts of this case that is not enough. Because Berry was an attorney and stood in a fiduciary relationship with the Kennerlys, it is incumbent upon Grooms to show that Berry had more than naked title. The record, however, is completely devoid of any evidence that Berry was entitled to the beneficial interest in Orangeburg Holding. Furthermore, were it not for the incorporation of Orangeburg Holding by Berry and Kennerly, Sr., in violation of the settlement with the trustee in bankruptcy, Berry

---

[2] We also note that there is no reason, other than an understanding between Kennerly, Sr. and Mr. Berry, that Kennerly, Sr. would have received any money from the bankruptcy settlement. The record shows that the bankruptcy trustee himself advised that if any monies from the settlement went, even indirectly, to Mr. or Mrs. Kennerly, the matter would be one best placed before the federal grand jury as a continuing bankruptcy fraud.

[3] The week this case was tried, Kennerly, Jr. discovered the missing Orangeburg Holding stock certificate with his father's possessions. The certificate had been indorsed in blank by Berry. Grooms argues, however, that Kennerly, Jr. failed to prove that the stock was delivered. Our disposition of this case does not require us to determine whether the certificate was delivered.

would have no claim of ownership. A court of equity will not lend its aid to one seeking to profit from his own wrongdoing. *Taff v. Smith*, 11 S.C. 306, 103 S.E. 551 (1920). For these reasons, the decree of the master quieting title in Grooms cannot be allowed to stand.

Kennerly, Jr. contends that he owns the property and that he is entitled to monies due his parents from Berry as the sole beneficiary under both of his parents' wills. However, the bankruptcy trustee specifically advised that the Kennerlys were not to receive any benefits from the settlement into which he entered with Iranian. On this basis, the master found that "[n]either Mrs. nor Mr. Kennerly, Sr. would have been entitled to these assets if they were alive. The assets would have belonged to their creditors." Kennerly, Jr. did not except to this finding. Therefore, he is precluded from claiming an interest in the property as the beneficiary under his parents' wills.

Accordingly, we hold that neither Grooms nor Kennerly, Jr. has shown a right to the Orangeburg Holding stock. "Equity will execute no corrupt agreement, but leave the parties in the condition they have prepared for themselves." *Arnold v. Mattison*, 24 S.C. Eq. (3 Rich. Eq.) 62, 63 (1850). The decree of the master is, therefore, affirmed as to the dismissal with prejudice of Kennerly, Jr.'s counterclaims, reversed as to the declaration of Grooms as the owner of the OHC stock and assets and vacated as to all remaining portions.

Affirmed in part, reversed in part and vacated in part.